UNITED STATES DISTRICT COURT					FOR ONLINE
EASTERN DISTRICT OF NEW YORK					PUBLICATION ONLY
_____X

ANTWAN GATHERS,

        Plaintiff,					MEMORANDUM
											 AND ORDER
											 04-CV-5454 (JG)

      -against-

DEBORAH WHITE, Et Al.,

        Defendants.
_____X

APPEARANCES:

    ANTWAN GATHERS
        #895-04-01833
        G.M.D.C. /C-73
        15-15 Hazen Street
        East Elmhurst, NY 11370
        Plaintiff, *Pro se*

    ELIOT SPITZER
        Attorney General of the State of New York
        120 Broadway
        New York, NY 10217
    By:  JOHN E. KNUDSEN
        Assistant Attorney General
        Attorney for Defendants

JOHN GLEESON, United States District Judge:

        This claim, filed on December 16, 2004, arises from the February 28, 2002 search and arrest of Antwan Gathers, a parolee in New York. Gathers claims that the search, arrest, and subsequent prosecution for a violation of parole violated his constitutional rights. He names three members of the Department of Parole as defendants, and seeks compensatory damages for

mental and emotional trauma and for lost wages. He also seeks the reassignment of two of the defendants. The defendants now move for summary judgment. For the reasons set forth below, summary judgment is granted in favor of the defendants.

BACKGROUND

A.  The Facts

Gathers was released on parole from state prison in New York on December 20, 2001. Gathers was assigned on January 18, 2002, to parole officer Hector Ruiz. On January 28, 2002, he first reported to Officer Ruiz, and underwent a urine test. The test indicated that Gathers had recently used marijuana, and Gathers signed a statement to that effect. Officer Ruiz arranged for Gathers to begin attending a drug treatment program on February 22, 2002. Ruiz informed Gathers that if he tested positive for drug use again, his parole would be violated and revoked.

On February 1, 2002, Gathers called Ruiz to request permission to attend the funeral of a family member in Georgia. Ruiz granted the permission, and Gathers attended the funeral. During his next scheduled visit to the parole office, Gathers claims that Officer Ruiz "verbally abused" him.[1] At the same meeting, Ruiz instructed Gathers to obtain a medicaid card to use in gaining entry to the drug treatment program. Gathers soon obtained the card.

Soon after, Gathers was given approval to move from his Queens residence to a residence in Brooklyn where his aunt and uncle lived. On February 22, 2002, Gathers attended the drug treatment program appointment that Officer Ruiz had scheduled, but was informed that

---

[1] Gathers also states that he provided a urine sample during this visit, but he does not comment on whether he did so during the January 28 visit. However, a toxicology report dated February 1, 2002 confirms that Gathers tested positive on the earlier date. This discrepancy is not material to my conclusion here.

he would not be admitted to the program because his medicaid card was inactive. On the same day, Officer Ruiz learned that Gathers's card had been rejected.[2] Less than a week later, members of the New York City Police Department indicated to Ruiz that Gathers was a suspect in an armed robbery and double murder investigation.

On February 28, 2002, Ruiz and another parole officer went to Gathers's Brooklyn residence while he was at home and informed him that they were there to verify his new home address. Gathers buzzed the parole officers into the building. When he opened the door of the apartment to let them in, the officers handcuffed Gathers and then radioed for several police officers to come up to the apartment. At that time, Officer Ruiz asked Gathers where his belongings were, and Gathers told him they were in the bedroom to the left of the doorway. Ruiz asked for permission to search the bedroom, and Gathers told him he didn't sleep in the room, so he was not in a position to grant the officers permission to search it. The parole officers searched in the bedroom and discovered an unloaded handgun as well as ammunition for the gun inside a clothes dryer in the room. The police took Gathers into custody.

On March 1, 2002 Ruiz served Gathers with a Notice of Parole Violation. The violation report listed four charges against Gathers: (1) possession of a weapon; (2) possession of a lethal weapon and behaving in a way that compromised the safety of others; (3) use of a controlled substance; (4) purposely failing to obtain a medicaid card and thereby sabotaging his acceptance into a program as directed by his parole officer. On the same day, defendant Burdick

---

[2] Gathers reports that he completed his move to Brooklyn after his medicaid card was rejected. He alleges that he then requested a transfer of his parole assignment to Brooklyn in light of his change of residence, but that Ruiz refused to allow the transfer unless Gathers gave him a clean urine sample. Gathers explains that in the following weeks, he attempted to do so, but suggests that Ruiz was never in the office on the days that he came in. However, Gathers was arrested less than a week after his medicaid card was rejected, an undisputed fact that contradicts Gathers's version of events.

-- a parole supervisor -- authorized an arrest warrant and the initiation of parole revocation proceedings against Gathers.

At a preliminary hearing on March 14, 2002, the hearing officer found probable cause for the violation, since Gathers had admitted using marijuana. Over the course of the next year, parole revocation hearings were repeatedly scheduled and adjourned, due to requests from both Gathers and the parole authorities. During this period, the state did not bring murder and robbery charges against Gathers. However, Gathers remained in custody due to his pending parole violation charges.

The final parole revocation proceedings -- prosecuted on behalf of the Department of Parole by defendant Deborah White -- went forward on January 31, 2003 and March 18, 2003. White prosecuted the first three charges, but did not pursue the charge alleging that Gathers purposely failed to obtain a medicaid card. The hearing officer determined that there was insufficient evidence to connect Gathers to the gun, and also found that the "positive test for marijuana use on 1/28/02 is not sustained as a violation in an important respect." The parole violation charges were therefore dismissed.

B.     The Claims at Issue

Gathers alleges in his complaint that the above events violated his constitutional rights. In his response brief, Gathers claims his Fourth Amendment rights were violated because the search of his residence was conducted for the "prime purpose" of enabling the police to circumvent constitutional requirements rather than for the purpose of supervising his parole. In an affirmation in opposition to the motion for summary judgment, Gathers states that his complaint centers on his claim that he was unjustifiably violated because the defendants were

4

acting as agents of the police department, and that the parole violation charges were unjustified because they were "trumped up charges to detain me until the police department had enough information to satisfy requesting a warrant in regards to prosecuting me." See Plaintiff's Affidavit/Affirmation in Opposition to Defendant's Notice, at ¶ 17.

The defendants argue that any Fourth Amendment claim fails because it does not violate the constitution when parole officers conduct searches in cooperation with the police, based upon information learned from the police. The defendants also argue that to the extent Gathers claims he was subjected to false arrest or malicious prosecution, his action fails because there was probable cause for the arrest and prosecution, and there was an absence of malice in the prosecution. In any event, the defendants conclude, all claims fail because defendants White and Burdick are protected by absolute immunity, and defendant Ruiz is protected by qualified immunity.

DISCUSSION

A.  The Standard of Review

Summary judgment shall be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Courts must determine whether or not a genuine issue of material fact exists by examining the evidence in the light most favorable to the non-moving party. See *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 253 (2d Cir. 2002). An alleged factual dispute regarding immaterial or minor facts between the parties will not defeat an otherwise properly supported motion for summary judgment. See *Howard v. Gleason Corp.*,

901 F.2d 1154, 1159 (2d Cir.1990). Instead, "there must be evidence on which a jury could reasonably find for the nonmovant." *Anderson*, 477 U.S. at 252.

B.      The Search

42 U.S.C. § 1983 bestows a federal cause of action for damages against any person who, under color of state law, deprives the plaintiff of a right secured by the Constitution.[3] Gathers asserts that a search conducted by parole officers -- valid if done as a part of parole supervision -- violates the Fourth Amendment when it is inspired, initiated, and participated in by police officers, and where the prime purpose of the search is to further a police investigation rather than to supervise the parolee. However, the Second Circuit's Fourth Amendment cases have explicitly rejected this "stalking horse" argument.

Gathers's argument would require courts to inquire into whether parole officers conducting a search were motivated primarily by the duty to supervise a parolee in order to protect the public, or instead by a desire to aid in a police prosecution. This sort of subjective inquiry is not appropriate. Instead of inquiring into the "prime purpose" of a search, the Second Circuit has made it clear that "[w]hether a particular warrantless parole search was unreasonable and thus prohibited by constitutional proscription must turn on whether the conduct of the parole officer was rationally and reasonably related to the performance of the parole officer's duty." *United States v. Newton*, 369 F.3d 659, 665-66 (2d Cir. 2004) (citing *People v. Huntley*, 401

---

[3]     42 U.S.C. § 1983 provides in relevant part as follows:
Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

6

N.Y.S.2d 31, 35 (N.Y. 1977).[4] *Newton* is consistent with the principle that courts do not "entertain Fourth Amendment challenges based on the actual motivations of individual officers." *United States v. Knights*, 534 U.S. 112, 122 (2001) (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)); *see also Cass v. County of Suffolk*, 2005 WL 1115472, *5 (E.D.N.Y. 2005) ("Regardless of the subjective intent of the officers involved, as long as their conduct was based on a valid condition of probation [or parole], the Fourth Amendment is not implicated.").

A parole officer has a duty "to investigate whether a parolee is violating the conditions of his parole -- one of which, of course, is that the parolee commit no further crimes -- when the possibility of violation is brought to the officer's attention." *United States v. Reyes*, 283 F.3d 446, 459 (2d Cir. 2002) (citing *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 368 (1998); *United States v. Thomas*, 729 F.2d 120, 124 (2d Cir.1984) (stating that parole officer had a duty "to investigate further to determine whether [the parolee] was being rehabilitated or was violating the conditions of his parole")). When determining whether the conduct of a parole officer was "rationally and reasonably related to the performance of the parole officer's duty,"

---

[4] The Supreme Court has recently ruled that the Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee where the search is supported by state law. *See Samson v. California*, __ U.S. __, 126 S.Ct. 2193 (2006). In *Samson*, the search was supported by a California law that provides that every prisoner eligible for release on state parole "shall agree in writing to be subject to search or seizure by a parole officer or other peace officer at any time of the day or night, with or without a search warrant and with or without cause." *See Id.* at 2196 (citing Cal.Penal Code Ann. § 3067(a) (West 2000)). With respect to probation, New York Criminal Procedure Law provides, "When a probation officer has reasonable cause to believe that a person under his supervision pursuant to a sentence of probation has violated a condition of the sentence, such officer may, without a warrant, take the probationer into custody and search his person." N.Y. Crim. Proc. Law § 410.50 (McKinney 1970). New York does not have parole-specific search provisions, relying instead upon the conditions of parole that parolees sign upon their release, pursuant to state parole regulations and Article 12(b) of the Executive Law. *See* N.Y. Crim. Proc. Law § 410.91(6). Gathers signed conditions stating, "I will permit the search and inspection of my person, residence, and property." I need not decide here whether, taken together, the above features of New York's parole landscape mean that New York allows the sort of suspicionless search of parolees that California does. *See People v. Hill*, 2002 WL 88977, *1 (1st Dep't 2002) ("The standard authorization for home entries and searches by parole officers given by defendant as a condition of his parole does not constitute an unrestricted consent to any and all searches and does not obviate a showing by the parole officers that the search was rationally related to [their] duty to detect and prevent parole violations.").

courts should examine the circumstances involved, keeping in mind that "the duties and objectives of probation/parole officers and other law enforcement officials, although distinct, may frequently be 'intertwined' and responsibly require coordinated efforts." *Newton*, 369 F.3d at 667. Furthermore, courts must recognize that parolees are subject to "a degree of impingement upon privacy that would not be constitutional if applied to the public at large," and that these restrictions are "meant to assure that the [parole] serves as a period of genuine rehabilitation and that the community is not harmed by the [parolee's] being at large." *Griffin v. Wisconsin*, 483 U.S. 868, 875 (2002). For that reason, "information provided by a police officer, whether or not on the basis of firsthand knowledge," may be a reasonable basis for a parole officer's search of a parolee. *Id.* at 879-80.

In addition, the fact that police officers accompany parole officers during a search does not render a reasonable search unreasonable. Indeed, in *Reyes*, the court noted that "it is difficult to imagine a situation where a probation officer conducting a home visit in conjunction with law enforcement officers, based on a tip that the probation officer has no reason to believe conveys intentionally false information about a supervisee's illegal activities, would not be pursuing legitimate supervised release objectives." *Reyes*, 283 F.3d at 463. Cooperation of police officers is especially appropriate where a parolee might react violently to a search. *See Newton*, 369 F.3d at 667 ("[B]ecause the information suggested . . . a not-insubstantial risk that Newton's response to any inquiry might be violent, it was entirely reasonable for the parole officers to solicit the assistance of the police in entering Ms. Wright's residence.").

In this case, there is no dispute that Officer Ruiz received information from the police that Gathers was a suspect in an armed robbery and double murder. This is the sort of

information that Officer Ruiz was justified in investigating, given his duty to ensure that the community was not harmed by Gathers while he was on parole. No reasonable jury could disagree that the search in this case was rationally and reasonably related to Ruiz's performance of his duty.[5] Therefore, I grant the defendant's motion for summary judgment as to the claim that the search violated Gathers's Fourth Amendment Rights.

Gathers does not base his claim on the scope of the search, that is, on whether Ruiz's search of the bedroom violated the Fourth Amendment even if the arrest (and the search of Ruiz incident to his arrest) was lawful. If this claim had been made, I would reject it on qualified immunity grounds. First, it would have been reasonable for Ruiz to conclude that Gathers had no standing to object to the search, since he stated he didn't sleep in that room and thus could not consent to a search. Second, the combination of the undisputed probable cause to arrest Gathers for drug use and Gather's written consent to searches of his residence upon being granted parole would make Ruiz's belief in the lawfulness of the search objectively reasonable.

C.      The Arrest and Prosecution

To the extent that Gathers's complaint includes a false arrest claim against defendant Burdick, or a malicious prosecution claim against Burdick and White, I also dismiss those claims.

A false arrest claim may not be maintained if there was probable cause for the arrest. *See Kent v. Katz*, 312 F.3d 568, 573 (2d Cir. 2002); *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (probable cause is a "complete defense" to an action for false arrest). A

---

[5] The presence or absence of police officers during the search is not relevant to my conclusion, though, if it were, I would find that the police presence was reasonable in light of the violent nature of the suspected conduct.

9

finding of probable cause may be based on the "totality of the circumstances," *Bernard*, 25 F.3d at 102 (citing *Illinois v. Gates*, 462 U.S. 213, 230 (1982)), so long as the arresting officer acted reasonably and in good faith in relying on that information. *Id.* (citing *Colon v. City of New York*, 468 N.Y.S.2d 453, 455 (1983)). Probable cause does not mean more likely than not, but only a "probability or substantial chance of criminal activity." *United States v. Bakhtiari*, 913 F.2d 1053, 1062 (2d Cir. 1990). When a parolee is involved, the lower "reasonable cause" cause standard is in place. New York regulations provide in relevant part:

> A warrant for retaking and temporary detention may issue when there is reasonable cause to believe that the releasee has lapsed into criminal ways or company, or has violated the conditions of his release in an important respect. Reasonable cause exists when evidence or information which appears reliable discloses facts or circumstances that would convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that a releasee has committed the acts in question or has lapsed into criminal ways or company.

N.Y. Comp. Codes R. & Regs. tit. 9, § 8004.2(c) (1978).

No reasonable jury could find an absence of reasonable cause to believe that Gathers had lapsed into criminal ways prior to his arrest. Indeed, no reasonable jury could find an absence of probable cause for the arrest. Gather's possession and use of marijuana -- crimes established by his urine test and admission the prior month -- alone constituted probable cause for his arrest. The arrest was further supported by the fact that a firearm and ammunition was found in the room where Gathers kept his personal belongings.

The lack of probable cause to arrest is also a necessary element of a malicious prosecution claim. In addition, a civil rights plaintiff must establish the other elements of a malicious prosecution claim: the initiation or continuation of a criminal proceeding against

plaintiff; the termination of the proceeding in plaintiff's favor; and actual malice as a motivation for the defendant's actions. *Russell v. Smith*, 68 F.3d 33, 36 (2d Cir.1995).

Gathers's malicious prosecution claim fails for at least two reasons. First, as discussed above, Gathers cannot prove that there was a lack of probable cause for the proceedings commenced against him. There was probable cause for the arrest, and the same probable cause remained during the preliminary hearing that took place less than two weeks later. In fact, the hearing officer at that preliminary hearing concluded that there was probable cause for the arrest. The later dismissal of the violation charges did not alter the fact that there was probable cause for the arrest and prosecution.

Second, Gathers cannot prove that malice motivated defendants Burdick and White to prosecute him. Though Gathers includes allegations that Officer Ruiz displayed malice towards him, there is no indication anywhere in the record that Burdick or White felt malice towards Gathers, or that malice motivated their decision to prosecute.

Therefore, I conclude that no reasonable jury could find the facts necessary to support a malicious prosecution claim.

D.  Absolute and Qualified Immunity

Even if summary judgment is not warranted on the above grounds, absolute and qualified immunity insulate all three of these defendants from liability in this case.

"Absolute immunity is reserved for officials who perform 'special functions' and deserve absolute protection from damages liability. Among these are prosecutors, and persons working under their direction, when they function as advocates for the state in circumstances 'intimately associated with the judicial phase of the criminal process.'" *Bernard v. County of*

*Suffolk*, 356 F.3d 495, 502 (2d Cir. 2004) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976)). Parole officers receive absolute immunity when they make a "discretionary decision to issue the warrant and initiate the parole revocation 'prosecution.'" *Scotto v. Almenas*, 143 F.3d 105, 113 (2d Cir. 1998). They also receive absolute immunity for "presenting the case for revocation to hearing officers, because such acts are prosecutorial in nature." *Id.* at 112. Burdick made the decision to sign the arrest warrant and initiate parole revocation proceedings, and White presented the case for revocation to hearing officers. Therefore, both of those defendants are absolutely immune from suit under the facts of this case.

By contrast, qualified immunity applies to law enforcement officials, including prosecutors, when they perform investigative rather than prosecutorial functions. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). A qualified immunity defense is established if (1) the defendant's action did not violate clearly established law, or (2) it was objectively reasonable for the defendant to believe that his action did not violate such law. *See, e.g.*, *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19, (1982). In cases where the evaluation of probable cause is at issue, a lesser standard of "arguable probable cause" is sufficient to insulate a law enforcement officer based on qualified immunity. *See Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004). Arguable probable cause exists if the officer making the arrest had an objectively reasonable belief that probable cause existed, or if "officers of reasonable competence could disagree" about the probable cause. *Id*.

Ruiz is protected by qualified immunity, because after receiving information from police that Gathers was a suspect in a robbery-double murder, it was objectively reasonable for him to believe there was probable cause to search Gathers's personal property and the area

surrounding it for evidence that Gathers was violating his parole. This is all the more true because Gathers already had a diminished expectation of privacy as a result of his parole status and Ruiz was already equipped with knowledge of Gather's undisputed, recent violation of parole by using marijuana.

## CONCLUSION

For the reasons discussed above, I grant summary judgment for the defendants. The case is hereby dismissed in its entirety.

So ordered.

John Gleeson, U.S.D.J.

Dated: February 8, 2007
       Brooklyn, New York